IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

LAURANNA WARE and
JEFFERY WARE,

           Plaintiffs,

v.                             CIVIL ACTION NO.   3:15-4285

SANTANDER CONSUMER USA, INC.,
a Texas corporation,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is a Motion to Dismiss or to Compel Arbitration by Defendant Santander Consumer USA, Inc.'s (Santander). ECF No. 7.   For the following reasons, the Court **DENIES** the motion.

On April 9, 2015, Plaintiffs Lauranna and Jeffery Ware filed their Complaint against Defendant, alleging that Defendant assessed illegal fees to a consumer loan.   Specifically, Plaintiffs assert that, in or around September of 2007, they obtained a $19,000 loan from Citifinancial Auto Credit, Inc. (Citifinancial) to purchase a vehicle.[1]   Thereafter, Defendant acquired the loan and/or the servicing rights from Citifinancial in or around 2010.   Plaintiffs allege that Defendant then assessed excess fees and late fees in violation of West Virginia law and in breach of contract.   Plaintiffs further assert that hundreds, and perhaps thousands, of similarly

---

[1] Defendant asserts Plaintiffs executed the Security Agreement on or about July 2, 2007.

situated West Virginia consumers were assessed such fees and, therefore, Plaintiffs seek class action status of their claims.

In lieu of filing an Answer to the Complaint, Defendant moves the Court to compel arbitration and dismiss this action pursuant to 9 U.S.C. § 3.[2] Defendant contends that Plaintiffs are bound by an arbitration clause, mandating that their claims be resolved by arbitration. Defendant contends that "[o]n April 11, 2011, at the request of the Plaintiffs, the parties entered into a Temporary Modification Agreement ("Modification Agreement") whereby [it] agreed to modify temporarily the terms of the underlying Agreement." *Mem. of Law in Supp. of Def. Santander Consumer USA, Inc.'s Mot. to Dis. or to Compel Arbitration,* at 2, ECF No. 8. The Modification Agreement is a three-page document addressed to both Plaintiffs on March 30, 2011. *Temp. Modification Agreement,* ECF No. 7-1, at 1. The Modification Agreement provides that payments will be reduced from $386.44 per month to $231.86 for a period of six months. In addition, the Modification Agreement contains an arbitration provision that provides, in part:

> As additional consideration for [Santander's] agreement to modify the terms of your Contract as set forth above and forbear from exercising its remedies under the Contract, you and [Santander] agree that upon written request by either party that is submitted

---

[2]Section 3 provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3.

> according to the rules for arbitration, any Claim, except those specified below, shall be resolved by binding arbitration in accordance with (i) the Federal Arbitration Act, (ii) the Rules of the chosen Administrator, and (iii) the Arbitration Provision.

*Id*. at 2.   The Modification Agreement defines a "Claim," in part, as:

> any claim, dispute, or controversy now or hereafter existing between you and [Santander], including without limitation, any claims arising out of, in connection with, or relating to the Contract, and any modification, extension, application, or inquiry of credit or forbearance of payment: . . . the closing, servicing, collecting or enforcing of the Contract: whether the claim or dispute must be arbitrated: the validity of this Agreement, except as relates to the class action waiver . . . –the validity and effect of the class action waiver may be determined only by a court and not by an arbitrator: any negotiations between you and [Santander]: any claim or dispute based on state . . . law . . . .  You and [Santander] also agree to submit to final, binding arbitration any claim or dispute that you or [Santander] has against all persons and/or entities (i) who are involved with the Contract, (ii) who signed or executed any document relating to the Contract or any Claim, and (iii) who may be jointly or severally liable to either you or [Santander] regarding any Claim.[3]

---

[3] The Exclusion from Arbitration provision states, in part, that the following matters are not subject to arbitration:

> Any Claim where all parties collectively (including multiple named parties) seek, in the aggregate, $15,000 or less in total monetary relief, including but not limited to compensatory, statutory and punitive damages, restitution, disgorgement, and costs and fees (including attorney's fees); or any Claims brought in a small claims court.  If you attempt to assert any Claim on behalf of a putative class of persons, in violation of other terms of this Agreement, the value of such Claim will, for purposes of this exclusion, be deemed to exceed $15,000.  If any party fails to specify the amount being sought for any relief, or any form or component of relief, the amount being sought shall, for purposes of this exclusion, be deemed to exceed $15,000.

*Id*.

*Id*. Based upon this language, Defendant insists that Plaintiffs are contractually bound to arbitrate their claims, including the issue of enforceability of the agreement. Plaintiffs argue, however, that no contract was ever formed between the parties by virtue of the Modification Agreement. Thus, Plaintiffs assert the Court, not the arbitrator, must determine the gateway issue of whether a contract exists because they cannot be forced to arbitrate under a non-existent contract.

Initially, the Court finds it is clear that whether or not a dispute must be submitted to "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960) (other citation omitted)). Although federal policy favors agreements to arbitrate, "[t]he question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *question of arbitrability,* is an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Id.* (emphasis original; internal quotation marks and citations omitted). In other words, courts must decide gateway disputes "about whether the parties are bound by a given arbitration clause[.]" *Id.* at 84 (citations omitted). "It is similarly well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co. v. Int'l Bro. of Teamsters*, 561 U.S. 287, 296 (2010) (citations omitted). Thus, it is this Court's responsibility to first determine whether a contract existed between the parties by virtue of the Modification Agreement.

Plaintiffs argue that the parties have no contractual relationship with each other under the Modification Agreement because it was never executed. Plaintiffs point to the specific

-4-

language on the first page of the Modification Agreement that states: "The effective date of the modified terms shall be the date [Santander] accepts and signs this Agreement, provided you sign and return this Agreement to [Santander] within 14 days of the date set forth above." *Id*. at 1. Although there is space for Defendant to sign and date the Modification Agreement, Defendant did not sign or date the document. In fact, the only signature appearing on the document is that of Lauranna Ware. Thus, by the Modification Agreement's own terms, it was never properly executed and never took effect.

In further support of their position that there was never a contractual relationship with Defendant to modify the terms of the original loan, Plaintiffs state they never acted upon the purported agreement. Plaintiffs provided the Court with their payment history showing they never paid the modified amount of $231.86. Instead, the payments they made were either at or near the original payment amount of $386.44. Furthermore, when Lauranna Ware requested a copy of their contract, Defendant only faxed her a copy of the original contract with Citifinancial, which does not contain an arbitration clause. The facsimile did not contain the purported Modification Agreement Defendant submitted in response to Plaintiffs' Complaint.

Plaintiffs further point out that on each page of the Modification Agreement, it clearly states in large font and in a separate box at the top of each page that the document is "Time Sensitive! Return via fax to 214.237.8511 within 14 days of letter date." *Id*. at 1, 2, & 3 (exclamation point and underlining original). In addition, as stated above, the language on page one of the Modification Agreement provides that: "The effective date of the modified terms shall be the date [Santander] accepts and signs this Agreement, provided you sign and *return this*

*Agreement to [Santander] within 14 days of the date set forth above*." *Id*. (italics added). Thus, in four different places, Defendant emphasized that time was of the essence and Plaintiffs had to return the document within fourteen days of March 30, 2011. However, the facsimile date stamp on the top of the Modification Agreement submitted as Exhibit A to Defendant's motion (ECF No. 7-1) clearly shows that the document was not faxed back to Defendant until May 20, 2011, far outside the fourteen-day window.

In Reply, Defendant submitted the first and third pages of a different Modification Agreement dated March 30, 2011. Although the Court was not provided page two, there are notable differences on pages one and three from the other Modification Agreement Defendant submitted. For instance, on page one of the more recently submitted March 30 document, the reduced payment amount is typed as $231.12, but that number is circled and a handwritten note states "231.86." *Temp. Modification Agreement*, at 1 (ECF No. 11-1). On the first Modification Agreement submitted by Defendant, there is no handwritten amount, but $231.86 is typed in as the reduced payment amount.[4] Furthermore, the more recently submitted document attached to Defendant's Reply shows that Lauranna Ware signed that document on April 3, 2011, with a facsimile date stamp of April 7, 2011. On the other hand, the first document submitted to the Court is dated April 11, 2011, with a facsimile date stamp of May 20, 2011. Defendant insists the Modification Agreement signed by Laurana Ware on April 3, 2011 is a valid agreement because it was returned within fourteen days of March 30, 2011.

---

[4]In addition, on both the first and third pages of the more recently submitted document attached to Defendant's Reply, the account number is provided in full, while on the Modification Agreement attached to the motion, the account number is abbreviated.

However, like the other Modification Agreement, Defendant never signed it, and, thus, there was no agreement between the parties. Moreover, although the fact that neither of the Modification Agreements were ever properly executed by Defendant is sufficient by itself to find a contract did not exist, the Court further finds that it is obvious Defendant realized the first Modification Agreement signed by Lauranna Ware reflected an inaccurate reduced payment amount and Defendant sent Plaintiffs a revised version of the Modification Agreement for their signature. Thus, it appears there was no meeting of the minds as to a critical term of the first Modification Agreement Lauranna Ware signed, which resulted in the revised Modification Agreement being offered to Plaintiffs. As stated above, the second Modification Agreement Lauranna Ware signed was not returned within fourteen days of March 30, 2011, as expressly required by Defendant, and Defendant never signed and dated it. Accordingly, the Court finds Defendant cannot enforce the arbitration provision in either version of the Modification Agreement because they were never executed and a contract was never formed.

In its Reply, Defendant also asserts that the check Plaintiffs used to finance their vehicle referenced the Security Agreement. Specifically, printed on the check was the following language: "By endorsing, using, or accepting the proceeds of this Check, I, the borrower(s) . . . agrees [sic] to the terms of the Note & Security Agreement (including the Truth in Lending Disclosure and the Arbitration Provision) . . . ." *Check Payable to Crown Pontiac Buick GMC* (dated July 2, 2007), ECF No. 9-2, at 17. Defendant argues the fact both Plaintiffs signed the check is sufficient to bind them to the Arbitration provision. However, as indicated by Plaintiffs,

there was no Arbitration provision in the Security Agreement and Defendant has not pointed to any Arbitration provision other than the one contained in the unexecuted Modification Agreement.

Accordingly, for the foregoing reasons, the Court finds there is no contractual relationship between the parties by virtue of the Modification Agreement and, therefore, Defendant cannot force Plaintiffs to arbitrate their claims or arbitrate the enforceability of the provision. Likewise, for the reasons stated, the Court rejects Defendant's argument that Plaintiffs are bound to arbitration because they signed the check. Therefore, the Court **DENIES** Defendant's Motion to Motion to Dismiss or to Compel Arbitration.[5] ECF No. 7.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 10, 2015

_____
ROBERT C. CHAMBERS, CHIEF JUDGE

---

[5] The parties also disagree whether Jeffery Ware had to sign the Modification Agreement in order for it to be valid, or whether Lauranna Ware had authority to create a binding contract, irrespective of the fact he did not sign either document. Given the Court's holding today, it finds it unnecessary to resolve the issues and declines to address them.