IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JEFFERY WARE, individually and
in his capacity as Administrator
of the Estate of LAURANNA WARE,

          Plaintiff,

v.                                    CIVIL ACTION NO. 3:15-4285

SANTANDER CONSUMER USA, INC.,
a Texas corporation,

          Defendant.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendant Santander Consumer USA Inc.'s Motion for Partial Summary Judgment (ECF No. 62), and a Motion to File Surreply by Plaintiff Jeffrey Ware, Individually and in his capacity as Administrator of the Estate of Lauranna Ware. ECF No. 89. For reasons appearing before the Court, the Court **GRANTS** Plaintiff's motion and, for the following reasons, the Court **GRANTS, IN PART**, Defendant's motion.

## I.
## FACTUAL AND
## PROCEDUREAL BACKGROUND

This action was filed by Plaintiff and his mother Lauranna Ware on April 9, 2015.[1] In the Complaint, Plaintiff asserts he and his mother obtained a $19,000 loan to purchase a vehicle around September 2007 from Citifinancal Auto Credit, Inc. (Citifinancial).[2] Defendant later

---

[1] After this action was filed, Lauranna Ware died, and Plaintiff now represents her as Administrator of the estate.

[2] Defendant asserts Plaintiffs executed the Security Agreement on or about July 2, 2007.

acquired the loan and the servicing rights from Citifinancial in or around 2010. In the Complaint, Plaintiff claims, *inter alia*, that Defendant repeatedly charged illegal late fees in excess of $15.00 and charged fees within the ten-day statutory grace period.[3]

Initially, Defendant filed a Motion to Dismiss or to Compel Arbitration pursuant to 9 U.S.C. § 3. ECF No. 7. In its motion, Defendant asserted Plaintiff was bound by an arbitration provision contained in a Modification Agreement for the loan. However, this Court denied Defendant's motion on December 10, 2015, finding Defendant failed to establish the parties ever entered into the Modification Agreement. *Ware v. Santander Consumer USA, Inc.*, Civ. Act. No. 3:15-4285, 2015 WL 8492762 (Dec. 10, 2015).

In its current motion, Defendant now argues the original loan documents contained an enforceable arbitration agreement. Defendant concedes, however, that the documents containing the arbitration provision cannot be found by either party. Nevertheless, Defendant argues it can prove through extrinsic evidence that the original loan documents contained an arbitration provision. In support, Defendant attached a Declaration of James Hart. ECF No. 62-10.

In his Declaration, Mr. Hart states he has worked for Defendant since 2010 and currently serves as the Senior Vice President of Call Center Operations. Prior to that time, he was employed by Citifinancial, and he worked as its Director of Operations. Based upon his experience, Mr. Hart asserts he is familiar with Citifinancial's records and practices during the time Plaintiff originated his loan. He further states that, based upon his personal knowledge and review of

---

[3]Plaintiff believes there are numerous similarly situated West Virginia consumers and asserts class action claims in the Complaint.

Defendant's business records relating to Plaintiff's loan and other loans made in West Virginia, it was Citifinancial's regular practice to use "Form Contracts" containing Note and Security Agreements. Mr. Hart contends that the Form Contracts given to consumers contained "substantially identical arbitration provisions, class action waivers, and choice of law provisions selecting either Texas or Nevada law." *Decl. of James Hart*, at ¶ 8.[4]

Based upon his experience and review of the documents related to Plaintiff's loan, Mr. Hart asserts Plaintiff and his mother "would have had to execute a Form Contract as part of the process for obtaining their loan, and that the Form Contract would have included an arbitration provision, class action waiver, and Nevada choice of law provision." *Id.* at ¶12. According to Mr. Hart, Plaintiff's Form Contract would have contained the following arbitration provision:

> ARBITRATION: This arbitration provision significantly affects your rights in any claim or dispute with us. Please read this arbitration provision carefully, before signing and negotiation your Check.
>
> Either you or we may choose to have any dispute between you and us, except as provided below, decided by arbitration. If arbitration is chosen, you and we will each give up the right to a trial by the court and/or a jury trial. If arbitration is chosen, you may not serve as a class representative or participate as a class member in any class action against any party entitled to compel arbitration under this provision.
>
> Any claim or dispute, except as provided below, whether in contract, tort or otherwise (including, without limitation, interpretation and the scope of this provision, the arbitrability of any issue and matters relating to the consummation, servicing, collection or enforcement of this loan) between you and us or our employees, agents, successors or assigns which arise out of or relate to this loan or any resulting transaction or relationship including any such relationship

---

[4]In early 2007, the choice of law provision switched from Texas to Nevada because Citifinancial became a wholly owned subsidiary of Citi Bank, N.A., which was headquartered in Nevada. *Id*. at ¶10.

> with third parties who do not sign the Check shall, at your or our election (or the election of any such third party) be resolved by neutral binding arbitration and not by court action. Any claim or dispute is to be arbitrated on an individual basis and not as a class action and you expressly waive rights you may have to arbitrate a class action. The Federal Arbitration Act governs this arbitration provision.
>
> . . . This Arbitration provision is binding upon and inures to the benefit of our respective heirs, successors and assigns.

*Id*. at ¶13 (ellipsis in Mr. Hart's Declaration).

Although an executed copy of the Note and Security Agreement cannot be located in Plaintiff's case, Defendant attached a letter it sent to Plaintiff and his mother congratulating them on being approved for their auto loan. The letter details the amount of the loan, the term of the loan, and the interest rate. *Ltr. from Citifinancial to Lauranna and Jeffery Ware* (June 29, 2007), ECF No. 62-2. The letter also specifically provides that a borrower's "endorsement of the Check indicates agreement with the Note and Security Agreement included herein. . . . [and the] Check will not be activated until all of the Conditions for Approval set forth in this package have been met and verified. . . . Citifinancial Auto will only activate one Check, subject to the terms and conditions stated." *Id*. In addition, Defendant submitted a copy of the Check used to pay for the vehicle. The front of the Check specifically states, in part, that "[b]y endorsing, using, or accepting the proceeds of this Check, I, the Borrower(s) . . . agrees to the terms of the Note & Security Agreement (including . . . the Arbitration Provision)[.]" *Check*, ECF No. 62-3. Immediately beside this language, appears the signatures of Plaintiff and his mother. *Id*. Defendant also attached to its motion the Security Agreement for State Specific Titling Requirements, which Plaintiff and his mother both signed. This document states in all capital letters that "BY SIGNING THIS SECURITY AGREEMENT, YOU AGREE TO AND ACKNOWLEDGE RECEIPT OF

THE TERMS AND CONDITIONS OF THE CHECK, THE DISCLOSURE STATEMENT ABOVE, THE TERMS AND CONDITIONS OF THE NOTE AND SECURITY AGREEMENT AS SUPPLEMENTED BY THIS SECURITY AGREEMENT." *Sec. Agreement for State Specific Titling Requirements*, ECF No. 62-7.

Defendant also attached a copy of Plaintiff's deposition. ECF No. 62-4. In his deposition, Plaintiff recalled that both he and his mother reviewed and signed a contract at Citifinancial. *Dep. of Jeffery Ware*, at 31-32. He further said his mother was given a copy of the contract, but he has been unable to locate it. *Id.* at 33. In addition, Plaintiff stated he reviewed the Check before he signed it, and he would not have signed it if he disagreed with it. *Id.* at 39-40. At one point during his deposition, Plaintiff was presented with a document that was intended to be an exemplar of the contract Plaintiff purportedly signed, which contained a full arbitration agreement. When asked if the document was similar to what he recalled signing, Plaintiff responded "[s]imilar to, this was my contract with CitiFinancial." *Id.* at 109. However, Plaintiff now states that the document he actually was shown was a refinance agreement and not a direct-to-consumer loan, which was the type of loan he obtained.

The Court held a hearing on the motion on March 6, 2017. In addition to arguing each side's respective positions on the motion, Plaintiff requested that he be able to depose Mr. Hart. The Court agreed to the request. Thereafter, Mr. Hart was deposed, and the parties have submitted supplemental briefing.

Together with his supplemental brief opposing summary judgment, Plaintiff submitted an Affidavit stating that he did not recall an arbitration agreement being included in the document he signed. *Aff. of Jeffrey Ware*, ECF No. 84-7. In addition, he asserts that Mr. Hart's conclusory statements in his Declaration are not supported by his deposition testimony. Plaintiff contends Mr. Hart based his conclusions on the fact that Citifinancial "systematically" printed computer-generated unsigned forms. However, Plaintiff contends that there was little accountability at Citifinancial to ensure that a full arbitration provision was in a customer's file before a direct-to-consumer loan was funded. Although loan processors had checklists to ensure loan packages were complete, Mr. Hart was not in charge of quality control, auditing files, or checking for errors. *Dep. of Hart*, at 100-01, ECF No. 87-1. Instead, he merely said he was aware that managers would conduct periodic spot checks of associates, but he did not know how frequently those checks occurred. *Id*. at 101. In addition, Plaintiff points out that, of all the files Mr. Hart reviewed, there was only one initial purchase loan that contained a full arbitration agreement in the file that could be read. *Id*. at 111. In light of these facts, Plaintiff argues Defendant has failed to establish his contract contained an arbitration provision.

In its supplemental brief, Defendant insists Mr. Hart's statements are based upon his personal experience of overseeing the processing of consumer loan documents for Citifinancial for six years. In his Declaration and at his deposition, Mr. Hart explained that Citifinancial used form contracts for all direct loans and they all included arbitration provisions. *Id*. at 101; *Dec. of Hart*, at 2. Mr. Hart explained the loan "package is all generated at one time, systemically, prepackaged and overnighted to the customer." *Id*. at 117. Mr. Hart stated the arbitration provision was systemically generated as part of the form contract, and it was Citifinancial's practice and

procedure to have included the note and security agreement when it sent the loan documents. *Id.* at 124, ECF No. 88-2.[5] He further said that, in his experience, the note and security agreement, containing the arbitration provision, always was included with the check in a direct-to-consumer loan. *Id.* at 131. Mr. Hart further said a form contract "absolutely" would have been included with the letter that was sent to Ms. Ware. *Id.* at 117.

Without doubt, Defendant's individual loan files are in shambles. Of the fifty-one "Direct-to-Consumer" contracts produced by Defendant that are similar to Plaintiff's loan, only one contained a completely legible arbitration provision. According to Plaintiff, twelve have garbled arbitration provisions that cannot be fully read. Twenty-seven other files do not have a copy of any arbitration provision from origination, and another eleven files have do not contain copies of loan contracts or arbitration provisions. *Pl.'s Corrected Suppl. Mem.*, at 3 n.5, ECF No. 87.

Upon examination of some of these documents by the Court, it appears that the computer files are corrupted and various words have been replaced by symbols and blank spaces. For instance, in one exhibit submitted by Defendant, the first paragraph of the arbitration provision is gibberish, while the remaining arbitration paragraphs on that page are intact. ECF No. 88-1, at 8. In his deposition, Mr. Hart explained that, in his experience, documents sometimes are not transferred or are missing when a portfolio of loans is acquired. *Dep. of Hart,* at 117. Mr. Hart said that several direct-to-consumer files he reviewed had corrupted data and the entire arbitration clauses could not be read. *Id.* at 138.

---

[5]Portions of Mr. Hart's deposition are found in attachments ECF Nos. 87-1 and 88-2.

## II.
## DISCUSSION

When a contract is reported to be lost, state law controls the standard for proving the contract's existence. *See Banks v. Mitsubishi Motors Credit of Am., Inc.*, 435 F.3d 538, 540 (5th Cir. 2005) (per curiam) (finding state law controls the burden of proof to show the existence of a missing agreement); *Drake v. Mallard Creek Polymers, Inc.*, No. 3:14-CV-00350-MOC, 2014 WL 6460242, at *1 (W.D. N.C. Nov. 17, 2014) (recognizing that "state law provides methods for proving the existence of a contract or parts of it where the contract is lost"). Under West Virginia law, "[t]he proponent of a lost or missing instrument must prove its existence and contents with clear and conclusive evidence." Syl. Pt. 2, *Estate of Bossio v. Bossio*, 785 S.E.2d 836 (W. Va. 2016). Upon consideration of the facts of this case, the Court finds Defendant has met its burden.

Here, the Court finds that Plaintiff's testimony at his deposition and documentary evidence is consistent with Mr. Hart's Declaration. Plaintiff signed a form "Security Agreement for State Specific Titling Requirements," which provides that he "AGREE[[D] TO AND ACKNOWLEDGE[D] RECEIPT OF THE TERMS AND CONDITIONS OF THE CHECK . . . [AND] THE TERMS AND CONDITIONS OF THE NOTE AND SECURITY AGREEMENT[.]" *Sec. Agreement for State Specific Titling Requirements*, ECF No. 62-7 (capitalization original). The Check signed by Plaintiff also expressly contains a reference to the Note and Security Agreement and its arbitration provision. When questioned, Plaintiff said he would not have signed the Check if he disagreed with it, and he recalled reviewing and signing a contract. *Dep. of Ware*, at 31-32, 39-40. Although Plaintiff now states in an Affidavit that he does not recall an arbitration provision in the documents he signed, the Court is not persuaded that the fact he cannot remember an arbitration provision being in the contract refutes its existence. Plaintiff signed the contract

nearly ten years before he gave his Affidavit. The Court believes it highly likely that vast majority of average consumers would not recall whether or not a contract contained an arbitration provision after so many years.

It also is unrefuted that loan packages were systemically generated by a computer, and Mr. Hart stated that those packages were sent by overnight mail to consumers. Although it is true Mr. Hart did not review every document produced by Defendant, this fact does not undermine his credibility or negate his ability to testify from his personal experience about the loan origination process and Citifinancial's business practices. Likewise, despite evidence that loan files are missing documents and are incomplete, it is of little consequence to this case because Plaintiff *admits* he signed a contract. As the contracts were computer-generated "form contracts," which contained arbitration provisions, the Court finds by clear and conclusive evidence in light of the totality of the extrinsic evidence described above that the contract Plaintiff signed contained an arbitration provision. In light of the arbitration provision, the Court further finds Defendant is entitled to enforce arbitration,[6] and the Court **DISMISSES** this case **WITHOUT PREJUDICE** pending arbitration.[7]

---

[6]Arbitration can be compelled upon establishing: "(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute." *Am. Gen. Life & Acc. Ins. Co. v. Wood*, 429 F.3d 83, 87 (4th Cir. 2005) (internal quotation marks and citations omitted). The Court rejects Plaintiff's argument that Defendant waived its right to arbitrate as Defendant has diligently pursued arbitration and critical evidence in support of Defendant's motion was obtained only after considerable discovery.

[7]Having decided the issue that Defendant has shown by clear and convincing evidence that Plaintiff entered into the form contract, which contained an arbitration clause, the Court declines to address Plaintiff's remaining claims.

# III.
# CONCLUSION

For the foregoing reasons, the Court **GRANTS, IN PART,** Defendant Santander Consumer USA Inc.'s Motion for Partial Summary Judgment (ECF No. 62),[8] and **GRANTS** the Motion to File Surreply by Plaintiff Jeffrey Ware, Individually and in his capacity as Administrator of the Estate of Lauranna Ware. ECF No. 89. Accordingly, the Court **DISMISSES** this case **WITHOUT PREJUDICE** pending arbitration.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: September 29, 2017

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[8] Although styled as a summary judgment motion, Defendant requests in his Memorandum that Plaintiff's claims be dismissed because they are subject to arbitration.